Barbara J. **DORNFELD**, Respondent,

v.

Scott Lee **OBERG**, Appellant (C2–92–216), Respondent (C8–92–219),

**American Family Insurance Co.,**
Respondent (C2–92–216),
Appellant (C8–92–219).

Nos. C2–92–216, C8–92–219.

Court of Appeals of Minnesota.

Sept. 29, 1992.

Review Granted Dec. 22, 1992.

James C. Wicka, Leanne G. Litfin, Messerli & Kramer, Minneapolis, for Barbara J. Dornfeld, respondent.

Karen J. Kingsley, Goff, Kaplan, Wolf & Shapiro, St. Paul, for Scott Lee Oberg.

Eric J. Magnuson, Louise A. Dovre, Stephen O. Plunkett, Rider, Bennett, Egan & Arundel, Minneapolis, for American Family Ins. Co.

Considered and decided by CRIPPEN, P.J., and SCHUMACHER and SCHULTZ,* JJ.

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment

## OPINION

CRIPPEN, Judge.

Respondent Barbara Dornfeld (Dornfeld) brought this action against appellants Scott Oberg and American Family Insurance Company, Dornfeld's underinsured motorist carrier, alleging intentional and negligent infliction of emotional distress resulting from an automobile accident in which her husband was killed. Oberg and American Family answered Dornfeld's complaint separately.

The matter was tried to a jury. In its verdict, the jury found that Oberg's conduct was reckless and outrageous, that Barbara Dornfeld reasonably feared for her own safety at the time of the accident, but that she did not suffer severe emotional distress as a result of this fear. The jury also found Oberg's conduct caused Barbara Dornfeld to experience severe emotional distress as the result of witnessing the death of her husband.

The trial court ordered judgment entered pursuant to the jury's verdict. The court further held that American Family was obligated to pay any damages awarded to Dornfeld to the extent of its coverage. Oberg and American Family filed separate appeals, which were consolidated.

## FACTS

On November 15, 1985, shortly after 11:00 p.m., Donald and Barbara Dornfeld were northbound on Highway 61 near Cottage Grove, Minnesota. The Dornfelds had been married for three days. The left rear tire of the Dornfeld vehicle went flat, and Mr. Dornfeld pulled the car to the right shoulder and got out to change the tire. Mrs. Dornfeld waited in the car.

It was snowing at the time and there was slush on the highway. The speed limit where Dornfeld stopped was 55 miles per hour; however, because of the road conditions, traffic was moving at below the posted limit.

pursuant to Minn. Const. art. VI, § 2.

At that time, Scott Oberg was also northbound on Highway 61. David Evelo, also northbound on Highway 61, testified that Oberg was going about 65 miles an hour when he passed the Evelo car. Evelo saw Oberg pass him, come up behind several cars in the left hand lane and pass those cars by driving partially on the shoulder and partially in the median. A passenger in the Evelo car testified Oberg passed the cars in the left hand lane, drove straight across both northbound lanes of the highway and hit the Dornfeld car.

When Oberg hit the Dornfeld vehicle, Donald Dornfeld was engaged in changing the left rear tire. The Oberg vehicle struck Donald Dornfeld and dragged him 200 to 230 feet, finally leaving him dead in the ditch. Although Barbara Dornfeld was tossed around inside the car, she was not injured physically.

The Evelo vehicle stopped near the Dornfeld car. Mrs. Dornfeld was on the shoulder, hysterical, screaming "where is my husband?" David Evelo and one of his passengers initially thought that Donald Dornfeld might be under the car. When they did not find him there, they walked down the road and found Donald Dornfeld in the ditch.

Oberg was arrested and taken to the Cottage Grove police station. Because of the severity of the accident, a blood test was taken, which revealed Oberg's blood alcohol content to be .224.

Following the accident, Dornfeld was unable to concentrate, had serious migraine headaches, had an ulcer attack and had a flare-up of ileitis. In addition, she was unable to sleep, had memory problems and had nightmares, including flashbacks of the crash. She sought counseling for her problems, but her condition did not improve. Dornfeld has been diagnosed as suffering from post-traumatic stress disorder as a result of the accident.

Dornfeld brought a dram shop action against the County Point Bar, where Oberg had been drinking. She also brought a wrongful death action against Oberg. She commenced the present action, alleging negligent and intentional infliction of emo-

tional distress, against Oberg and American Family, her underinsured motorist insurance carrier.

Following trial, the jury returned its verdict finding that Dornfeld was within the zone of physical danger at the time of the accident, that she reasonably feared for her own safety at the time, but that she did not suffer severe emotional distress as a result of her fear for her own safety. The jury found $230,600 compensatory damages solely for the emotional distress caused by Dornfeld's being present and witnessing the death of her husband. The jury also found that appellant Oberg's driving conduct was reckless, extreme and outrageous.

The trial court ordered judgment entered pursuant to the jury's verdict and the court's conclusion that respondent Dornfeld had a valid claim for intentional infliction of emotional distress. The court subsequently determined that the American Family policy provided $100,000 underinsured motorist coverage for the verdict recovered by Barbara Dornfeld.

## ISSUES

1. Did the trial court err in determining Dornfeld could maintain a cause of action against Oberg for intentional or reckless infliction of emotional distress as a result of her presence at the death of her husband?

2. Did the trial court err in determining the American Family policy provides underinsurance coverage for Dornfeld's emotional distress?

## ANALYSIS

1. *Dornfeld's Cause of Action*

The Minnesota Supreme Court first recognized intentional or reckless infliction of emotional distress as an independent tort in *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428 (Minn.1983). In recognizing intentional infliction of emotional distress as an independent tort, the court in *Hubbard* adopted the definition set forth in

Restatement (Second) of Torts § 46(1) (1965), which provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.* Section 46(2) of the Restatement's definition, which refers to liability to third parties, provides:

> Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>
> (b) to any other person who is present at the time, if such distress results in bodily harm.

*Id.*

Appellants contend that to allow Dornfeld to recover requires this court to create a new cause of action. We believe this is an overstatement. Recovery in this case is warranted by application of an established body of Minnesota tort law.

Prior Minnesota cases have permitted recovery for injuries resulting from fear for one's own safety. *See Okrina v. Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259 (1969); *Purcell v. St. Paul City Ry.*, 48 Minn. 134, 50 N.W. 1034 (1892); *see also Quill v. Trans World Airlines, Inc.*, 361 N.W.2d 438 (Minn.App.1985), *pet. for rev. denied* (Minn. Apr. 18, 1985) (discussing negligent infliction of emotional distress). Recovery has been denied when a person not within the zone of danger suffers emotional distress as a result of seeing injuries inflicted on another. *See Stadler v. Cross*, 295 N.W.2d 552 (Minn.1980).

In following the Restatement, *Hubbard* merely corrected the physical injury requirement prior Minnesota cases had imposed on persons seeking to recover for emotional distress. *Hubbard* did not limit

the development of the law up to that time. Minnesota has long allowed recovery to persons within the zone of danger. Recovery was denied in *Stadler* solely because the plaintiffs were not within the zone of danger, thus implying that if the plaintiffs had been within the zone of danger, recovery would have been permitted.[1]

Oberg and American Family contend Dornfeld cannot recover for intentional infliction of emotional distress because of her particular susceptibility to such distress, relying on *Bohdan v. AllTool Mfg. Co.*, 411 N.W.2d 902 (Minn.App.1987), *pet. for rev. denied* (Minn. Nov. 13, 1987) and *Cafferty v. Garcia's of Scottsdale, Inc.*, 375 N.W.2d 850 (Minn.App.1985). As the restatement notes:

> The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge.

Restatement (Second) of Torts § 46, cmt. j.

In the present case, the jury was instructed that Dornfeld had to prove she suffered from severe emotional distress and that to make such a showing, she must prove the distress she suffered was so severe that no reasonable person could be expected to endure it. In addition, the jury was instructed that Dornfeld could recover for any aggravation of a preexisting condition. The jury apparently rejected the argument that Dornfeld was particularly susceptible to emotional distress and found that Dornfeld experienced severe emotional distress as a result of Oberg's conduct.

### 2. *Insurance Coverage*

Dornfeld's policy issued by American Family provided:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle.

---

1. We note the New York Court of Appeals, while limiting recovery to claimants in the zone of danger, has permitted an emotional harm claim in the circumstances under which Dornfeld seeks to recover. *Bovsun v. Sanperi*, 61 N.Y.2d 219, 461 N.E.2d 843, 473 N.Y.S.2d 357 (1984).

The bodily injury must be caused by accident and arise out of the use of the underinsured motor vehicle.

The trial court determined that the death of Donald Dornfeld was caused by an accident and held that American Family's underinsured motorist coverage applied.

■ In determining whether an event is an accident for purposes of uninsured—underinsured motorist coverage, intentional acts are viewed from the tortfeasor's perspective. *McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 479 (Minn. 1992). The court explained:

Uninsured motorist coverage is purchased to protect against the risk that the motorist who injures the purchaser is uninsured (or underinsured) and unable to pay the damages the purchaser is entitled to recover under tort law. The victim, in other words, collects under her own policy the compensation that the liability carrier would have paid if the uninsured motorist had been insured. *See State Farm Mut. Auto. Ins. Co. v. Galloway*, 373 N.W.2d 301, 306 (Minn.1985); Appleman, *supra*.

*Id.* at 479.

Compensation "the liability carrier would have paid if the [under]insured motorist had been insured" is considered limited by the intentional act exclusion found in standard automobile liability policies. *Id.* Describing the reasoning leading to its opinion, the *McIntosh* court observed that "the term 'accident' must have been inserted in the [uninsured—underinsured motorist] coverage clause for a reason"; that this reason is suggested by the absence of an intentional act exclusion in uninsured—underinsured motorist coverage; and that "the word 'accident' is intended to create such an exclusion." *Id.* at 479.

The trial court concluded in this case that the jury properly determined appellant Oberg's actions were reckless, but that

[n]one of the evidence presented suggests that Oberg intended to cause an accident or injure [respondent Dornfeld's] husband when he drove drunk on November 15, 1985.

The trial court's observation is supported as a matter of fact by the jury's verdict and by the evidence of record. It is also in accord with legal distinctions between reckless and intentional wrongdoing. *See Kempa v. E.W. Coons Co.*, 370 N.W.2d 414, 421 (Minn.1985) (although reckless act is intentionally committed, intentional wrongdoing involves intent to harm).

Having observed that no intentional act was involved, the trial court concluded that respondent Dornfeld was entitled to underinsurance benefits, consistent with matters of law as the court viewed them before the supreme court's August 1992 decision in *McIntosh*. The same result is dictated by *McIntosh*. An act which is reckless but is not intentional does not come within an intentional act exclusion. *Caspersen v. Webber*, 298 Minn. 93, 97–99, 213 N.W.2d 327, 330 (1973).

Appellant American Family contends that we should not determine its coverage by reference to an intentional act exclusion, but rather that we should deny coverage because of authorities indicating that reckless conduct, like intentional wrongdoing, falls outside of some definitions of the term "accident." Thus, because respondent Dornfeld has underinsurance coverage only for injuries "caused by accident," American Family contends that there is no coverage for injuries caused by Oberg's reckless misconduct. *See Bituminous Cas. Corp. v. Bartlett*, 307 Minn. 72, 78, 240 N.W.2d 310, 313 (1976) (in general liability policy, either "intentional or reckless" acts viewed outside a covered "occurrence," defined in the policy as an expected or intended accident), *overruled on other grounds, Prahm v. Rupp Construction Co.*, 277 N.W.2d 389 (Minn.1979); *Farmers Union Oil Co. v. Mutual Service Ins. Co.*, 422 N.W.2d 530, 533 (Minn.App.1988) (following *Bituminous*, concludes recklessness is outside the definition of occurrence).

The preceding argument of appellant American Family misconstrues *McIntosh* and misstates the law of the case. Although the *McIntosh* court concludes that the coverage for an accident is to be viewed

from the perspective of the tortfeasor, it implements this concept by visualizing liability coverage of the tortfeasor, and it envisions an intentional act exclusion for this coverage—not a newly conceived "nonaccident" exclusion. As stated earlier, *McIntosh* specifically states and approves the notion that the tortfeasor's view is seen in terms of a liability policy containing an intentional act exclusion. *See McIntosh,* 488 N.W.2d at 479.

This view of *McIntosh* is supported by numerous additional considerations:

1. *McIntosh* addressed a fact situation involving intentional wrongdoing. Nothing in the opinion of the supreme court suggests an intention to limit uninsured or underinsured motorist coverage in circumstances involving reckless misconduct. Similarly, when this court on earlier occasions called for viewing accident coverage from the vantage point of the tortfeasor, it reached that conclusion in circumstances found to involve intentional misconduct. *Wilson v. State Farm Mut. Auto. Ins. Co.,* 451 N.W.2d 216 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 22, 1990); *Petersen v. Croft,* 447 N.W.2d 903 (Minn.App. 1989), *pet. for rev. denied* (Minn. Jan. 12, 1990).

2. In addition to language in *McIntosh* already quoted in respect to an intentional act exclusion, the court cited and approved the notion that uninsured and underinsured motorist coverage is in the nature of a "substitute liability policy" for the uninsured or underinsured motorist. *McIntosh,* 488 N.W.2d at 479 (citing 8C Appleman, Insurance Law Practice § 5067.45, pp. 49–50 (1981)). We believe it well established that ordinary automobile liability coverage includes an intentional act exclusion but does not include other coverage limitations affecting the outcome of this case.

3. Consistent with our reading of *McIntosh,* this court has previously observed, when concluding that accident coverage is viewed from the perspective of the tortfeasor, that this would be in accord with the conclusion that coverage should be subject to an exclusion for the intentional acts of the tortfeasor. *See McIntosh v. State Farm Mut. Auto. Ins. Co.,* 474 N.W.2d 227, 229 (Minn.App.1991), *aff'd in part and rev'd in part,* 488 N.W.2d 476 (Minn.1992); *Petersen,* 447 N.W.2d at 905–06.

4. It is evident in this case that appellant Oberg had actual liability coverage, albeit inadequate, and that benefits were paid under that policy in spite of the factual circumstances in this case. We believe it anomalous to imagine that Oberg's actual liability coverage policy would cover the incident but that substitute liability coverage, written to enlarge the sum of liability insurance, would not apply in the same circumstances. *McIntosh* avoids an opposite inconsistency, the existence of underinsurance coverage where actual liability coverage would not exist because of an intentional act exclusion. We think it inappropriate to apply *McIntosh* in a fashion leading to an absurd and anomalous result.

5. Similarly, American Family's argument requires an unreasonably constrained view of underinsurance coverage. *McIntosh* supports the conceptual view of underinsurance coverage as a vehicle to enlarge the recovery of the insured where full compensation is prevented only by the fact that existing liability coverage is too limited in amount. The insured should not be accorded underinsurance benefits which are less expansive than what would in fact be available if liability coverage had been written with larger limits.

6. We observe that American Family's argument is specifically premised on application to this case of holdings stated in *Bituminous Cas. Corp. v. Bartlett* and *Farmers Union Oil Co. v. Mutual Services Ins. Co.* Both of these cases deal with the definition of "occurrence" in a general liability policy. In each instance the governing policy defines occurrence in terms of an accident "neither expected nor intended." This clause and these holdings do not carry weight in the unique circumstances of automobile liability policies, which do not include similar language.

7. Finally, American Family contends that two cases from other jurisdictions stand for the proposition that there is no insurance coverage for intentional or reck-

less infliction of emotional distress claims. *See Tapscott v. Allstate Ins. Co.*, 526 So.2d 570 (Ala.1988); *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 383 S.E.2d 2 (S.C.Ct.App.1989). Suffice it to say that both of these cases involve misconduct clearly characterized as intentional. These authorities do not govern the treatment of reckless behavior in the use of an automobile.

### 3. *Other contentions*

 It is argued on appeal that appellant Oberg's conduct was not extreme and outrageous. As noted, drinking and driving is not an unusual occurrence. However, this conduct may be extreme and outrageous. *See Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961) (murder); *Nancy P. v. Di'Amato*, 401 Mass. 516, 517 N.E.2d 824 (1988) (child abuse); *Maney v. Maloney*, 101 A.D.2d 403, 477 N.Y.S.2d 436 (1984) (manslaughter). Oberg's blood alcohol content was more than twice the legal limit; he was speeding during a snowstorm on slippery streets and using the center median to pass.

Whether conduct meets the appropriate standard is a question for the jury. *Hubbard*, 330 N.W.2d at 439. As noted before, the evidence in this case sustains the jury's verdict that Oberg's driving conduct was reckless, extreme and outrageous.

Appellants also contend the trial court erred in its evidentiary rulings. A trial court's decision to exclude evidence will not be reversed on appeal absent a clear abuse of discretion. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983).

> [B]efore an error in the exclusion of evidence may be grounds for a new trial, it must appear that such evidence might reasonably have changed the result of the trial if it had been admitted.

*Id.* (quoting *Poppenhagen v. Sornsin Constr. Co.*, 300 Minn. 73, 79–80, 220 N.W.2d 281, 286 (1974)).

Appellants contend the trial court erred in excluding evidence of Oberg's remorse following the accident. We find no error. Regardless of what Oberg may have done or felt after the accident, the trial dealt only with his conduct leading up to the accident.

Appellants contend the trial court erred in excluding evidence of Dornfeld's prior wrongful death and dram shop actions, including the amounts of recovery in those actions. These causes of action, however, involved different elements of damages, not including the emotional distress for which recovery is sought. *See* Minn. Stat. § 340A.801, subd. 1 (1990) (Civil Damages Act allows recovery for pecuniary loss), § 573.02, subd. 1 (1990) (Wrongful Death Act allows recovery for pecuniary loss). There was no abuse of discretion.

### DECISION

Respondent Dornfeld's recovery from appellant Oberg is authorized under existing Minnesota law. In addition, the trial court correctly determined that she is entitled to underinsurance motorist benefits under her policy with American Family Insurance Co.

Affirmed.