Barbara J. DORNFELD, Respondent,

v.

Scott Lee OBERG, Appellant (C2–92–216) Respondent (C8–92–219),

and

American Family Insurance Company, Respondent (C2–92–216) Appellant (C8–92–219).

Nos. C2–92–216, C8–92–219.

Supreme Court of Minnesota.

July 23, 1993.

Eric J. Magnuson, Louise A. Dovere, Stephen O. Plunkett, Minneapolis, for American Family Ins.

Karen J. Kingsley, St. Paul, for Scott Oberg.

James C. Wicka, Leanne G. Litfin, Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

This case raises the issue of whether a cause of action exists for intentional or reckless infliction of emotional distress where a person claims to have suffered severe emotional distress as a result of being present at the death of a family member.

Respondent Barbara Dornfeld brought suit against appellants Scott Oberg and American Family Insurance Company, claiming both negligent and intentional infliction of emotional distress arising out of a motor vehicle accident in which her husband was killed. Following a jury trial, the jury awarded respondent damages for reckless infliction of emotional distress, finding that appellant Oberg's conduct was extreme and outrageous, was reckless, and resulted in severe emotional distress in respondent.[1] The court of appeals affirmed, holding that a person who is in the "zone of danger" of physical injury and suffers severe emotional distress as a result of the observation of the death of an immediate family member may recover damages for intentional or reckless infliction of such distress. *Dornfeld v. Oberg*, 491 N.W.2d 297, 300 (Minn.App.1992). This court granted review for the limited purpose of determining whether under the facts of this case a cause of action exists for intentional or reckless infliction of emotional distress.

On November 15, 1985, Don Dornfeld and his wife, respondent Barbara Dornfeld, were driving home after an evening of dancing. Around 11:00, while traveling north on Highway 61 near Cottage Grove, the Dornfelds' car had a flat tire. They pulled off the road onto the right shoulder, and Don Dornfeld put on the warning flashers before going to change the rear tire on the driver's side. Mrs. Dornfeld remained in the car.

While changing the tire, Mr. Dornfeld was hit by a car driven by appellant Scott Oberg. Oberg, whose blood alcohol content was .224 at the time of the accident, dragged Dornfeld's body over 200 feet, leaving him in the right roadside ditch.[2]

1. The jury rejected respondent's claim for negligent infliction of emotional distress, finding that she did not suffer any physical manifestations of severe emotional distress caused by fear for her own safety at the time of the accident.

2. The details of the events preceding the collision are somewhat disputed. Oberg claimed that he was driving close to the speed limit when he saw the car in front of him put on its brake lights. Because he realized he could not stop in time, he tried to change lanes, but the

Oberg claimed that he never saw the Dornfeld vehicle prior to impact. Mr. Dornfeld was pronounced dead at the scene.

Respondent, who remained inside the car on the passenger side, felt but did not see the Oberg vehicle or the resulting collision. She testified that although she felt the impact, she "just had no idea what hit or where it came from." She suffered no significant physical injuries as a result of the crash.

After the collision, respondent got out of the car and asked where her husband was. Witnesses and police officers told her that her husband had been found in a roadside ditch and that he was dead. When she asked to see him one last time, police led her to his body, where she bent over to kiss him goodbye.

As a result of the accident, respondent claims that she began to suffer from post-traumatic stress syndrome/disorder (PTSS/PTSD). She claims that she suffered from memory deterioration, inability to retain jobs, and terrible nightmares as a result of the accident. A psychiatrist testified at trial that the accident triggered the onset of Mrs. Dornfeld's PTSS.

After hearing this evidence, the jury found that Oberg's extreme and outrageous conduct had been reckless and that it resulted in respondent suffering severe emotional distress. The court of appeals affirmed, finding that respondent Dornfeld's recovery was authorized under existing Minnesota law. *Dornfeld v. Oberg*, 491 N.W.2d at 303. Appellants Oberg and American Family Insurance then appealed to this court, claiming that neither the facts of this case nor existing Minnesota law supports a cause of action for intentional or negligent infliction of emotional distress.

In determining whether to recognize this cause of action, we must look to past precedent and the language of the *Restatement (Second) of Torts* § 46 (1965). In *Hubbard*

*v. United Press Int'l, Inc.*, 330 N.W.2d 428 (Minn.1983), this court adopted the formulation set forth in section 46(1) of the *Restatement (Second) of Torts* with respect to the elements necessary to prove intentional infliction of emotional distress. Specifically, this section provides as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Restatement (Second) of Torts* § 46(1) (1965).

This court, in adopting this cause of action, stated that four elements must be proved in a claim for intentional or reckless infliction of emotional distress. These are: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard*, 330 N.W.2d at 438–39. This court noted that such "extreme and outrageous" conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (*quoting Haagenson v. National Farmers Union Prop. & Casualty Co.*, 277 N.W.2d 648, 652 n. 3 (Minn.1979)); *see Restatement (Second) of Torts* § 46 cmt. d (1965). The *Restatement* emphasizes that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Restatement (Second) of Torts* § 46 cmt. j (1965).

In adopting this standard, we did not intend to expand the *Restatement* formulation. In fact, we expressed an intent to construe these claims quite narrowly: "Tort claims seeking damages for mental distress generally have not been favored in Minnesota. We have been careful to restrict the availability of such damages to those plaintiffs who prove that emotional injury occurred under circumstances tend-

first snowfall of the year caused his car to slide all the way across the left- and right-hand lanes and onto the right-hand shoulder, where he hit Mr. Dornfeld. Other observers claimed that Oberg was driving 15 miles per hour over the speed limit and was using the grassy median to

pass cars in the left-hand lane before returning to the roadway and sliding across the road to hit Mr. Dornfeld. Despite these differing accounts, Oberg stipulated prior to trial to causal negligence.

ing to guarantee its genuineness." *Hubbard*, 330 N.W.2d at 437. We further emphasized that "[t]he operation of this tort is sharply limited to cases involving particularly egregious facts." *Id.* at 439.

Despite recognizing a new cause of action for intentional infliction of emotional distress, this court specifically refused to answer the question of whether third parties or bystanders could avail themselves of this remedy, stating, "While we adopt the theory of Restatement (Second) of Torts § 46(1) (1965), the third party issues reflected by subsection (2) are not before us and we do not pass upon them." *Id.* at 439 n. 8. This latter section, which addresses the issue of liability to third parties for emotional distress, provides:

> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> > (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (b) to any other person who is present at the time, if such distress results in bodily harm.

*Restatement (Second) of Torts* § 46(2) (1965). It is precisely the issues addressed in subsection (2) which this case raises. Thus, this court must determine whether the facts of this case justify recognizing such an action.

The court of appeals held that respondent's recovery was justified by existing Minnesota tort law. To reach this conclusion, the court of appeals added the requirement that a plaintiff must be within the "zone of danger." *Dornfeld*, 491 N.W.2d at 300; *see Stadler v. Cross*, 295 N.W.2d 552 (Minn.1980). The court of appeals stated, "Minnesota has long allowed recovery to persons within the zone of danger. Recovery was denied in *Stadler* solely because the plaintiffs were not within the zone of danger, thus implying that if the plaintiffs had been within the zone of danger, recovery would have been permitted." *Dornfeld*, 491 N.W.2d at 300 (footnote omitted).

We believe the analysis by the court of appeals blurs the distinction between two independent torts—intentional infliction of emotional distress and negligent infliction of emotional distress. While the court of appeals is correct in noting that Minnesota has allowed recovery for injuries resulting from fear for one's own safety for those within the zone of danger, *see, e.g., Stadler v. Cross*, 295 N.W.2d 552 (Minn.1980); *Okrina v. Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259 (1969); *Purcell v. St. Paul City. Ry.*, 48 Minn. 134, 50 N.W. 1034 (1892), these cases have arisen under the theory of *negligent* infliction of emotional distress, not under *intentional* infliction of emotional distress. In addition, the cases cited above also require persons to prove that they suffered severe emotional distress with resultant physical injury before recovery is permitted, *Stadler*, 295 N.W.2d at 553, and proof of physical injury is only a requirement for negligent infliction of emotional distress, not for intentional infliction. *See Restatement (Second) of Torts* § 436A (1965). Thus, these prior cases are inapposite. The issue in this case is one of first impression for this court.

Under section 46(2) of the *Restatement (Second) of Torts*, one is liable for reckless infliction of emotional distress only if some intentional action is taken toward the third party. While Minnesota courts have found that a cause of action exists when a wall suddenly collapses, *Okrina v. Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259 (1969), or when a plane drops 34,000 feet, *Quill v. Trans World Airlines, Inc.*, 361 N.W.2d 438 (Minn.App. 1985), *pet. for rev. denied* (Minn., Apr. 18, 1985), these actions have arisen under *negligent* infliction of emotional distress, not intentional infliction of emotional distress, in part because there was no intent or no intended victim.

In contrast, section 46(2) clearly requires that the reckless conduct be "directed at" a third party, thereby requiring some intentional act on the part of the actor. *Restatement (Second) of Torts* § 46(2) (1965). In fact, the *Restatement* defines "recklessness" as an intentional act with unintended consequences: "While an act to be reckless

must be intended by the actor, the actor does not intend to cause the harm which results from it." *Restatement (Second) of Torts* § 500 cmt. f (1965). Thus, in order to qualify as "reckless" within the meaning of section 46, the act itself must be intentional.

Furthermore, the *Restatement* defines reckless infliction of emotional distress in the chapter on *intentional* torts, whereas *negligent* infliction of emotional distress is defined in the negligence section, thereby further indicating that reckless infliction of emotional distress requires some "intentional" act. *Compare Restatement (Second) of Torts* § 46 (1965) (discussing the requirements for intentional or reckless infliction of emotional distress) *with Restatement (Second) of Torts* §§ 312–313 (1965) (defining the conduct which gives rise to an action for negligent infliction of emotional distress) *and Restatement (Second) of Torts* §§ 436–436A (1965) (describing the rules which determine the responsibility of an actor for negligent infliction of emotional distress). Thus, in order to hold Oberg liable for reckless infliction of emotional distress, this court must find that his actions were intentionally "directed at" respondent's husband.

Under the facts of this case, it is difficult to construe Oberg's conduct as being "directed at" any third person. While reckless driving or driving while intoxicated is morally reprehensible and is punishable by criminal sanctions, it is difficult to see how that reckless driving is "directed at" any particular motorist within the meaning of the *Restatement (Second) of Torts* § 46(2). Mere reckless driving is directed, if at all, only at the driving community generally rather than at a particular individual, and, therefore, such conduct would be insufficient to give rise to a claim for intentional or reckless infliction of emotional distress.[3] Allowing recovery under the present facts would raise the specter that any surviving family member in a car crash caused by a drunk or reckless driver could maintain an action against the driver for intentional infliction of emotional distress.[4]

■ Instead, the *Restatement* contemplates that recovery should be permitted only when the extreme and outrageous conduct is *directed at* a third person, such as when a husband is murdered in the presence of his wife. In such cases, "the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff." *Restatement (Second) of Torts* § 46 cmt. 1 (1965). Commentators have also emphasized that recovery under this section requires some action directed at a particular third person:

On the facts of all of these cases, it would appear that there was a very high degree of probability that the mental disturbance would follow, and that the defendant proceeded in conscious and deliberate disregard of it, so that the defendant's conduct would properly be called wilful, wanton or reckless.

There are other cases in which recovery has been denied, usually on the ground that the mental disturbance was not a thing that could reasonably have been anticipated.

Ordinarily recovery in such cases is limited to plaintiffs who are not only present at the time, but are known by the defendant to be present, so that the mental effect can reasonably be anticipated by the defendant.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 12, at 65 (5th ed. 1984) (footnotes omitted).

■ Thus, the available evidence indicates that in order to recover for intentional or reckless infliction of emotional distress, the conduct must be "directed at" a particular third person and the defendant

---

3. Unless, of course, the reckless driver somehow intended to take some action against, or inflict some harm upon, that third person.

4. Moreover, in a case such as this one, the surviving family member may be able to maintain a wrongful death or dram shop action. *See* Minn.Stat. § 340A.801, subd. 1 (1992) (allowing plaintiffs to bring a dram shop act against the person or entity causing the intoxication); Minn.Stat. § 573.02, subd. 1 (1992) (providing, under the Wrongful Death Act, for recovery for pecuniary loss). Thus, while the family member may not have a cause of action for intentional infliction of emotional distress, they are not without other independent remedies.

must know of the plaintiff's presence so that the mental effect upon the plaintiff can be anticipated by the defendant. Here, Oberg's reckless driving was not "directed at" any particular third person, and Oberg was not aware of respondent's presence.[5] Thus, under the facts of this case, Oberg's conduct was not "directed at" respondent's husband within the meaning of the *Restatement (Second) of Torts* § 46(2) (1965), and respondent's claim for intentional or reckless infliction of emotional distress must therefore fail.[6]

Reversed.

SIMONETT, J., took no part in the consideration or decision of this case.

**5.** Respondent's failure to observe the fatal accident is not directly relevant to her claim for intentional or reckless infliction of emotional distress but could be relevant in a claim for negligent infliction of emotional distress. Whether respondent was inside the car unaware of the accident, or outside the car observing the entire incident, she would not be entitled to recover in either instance, because the conduct was not "directed at" her. If respondent had actually observed the accident while standing on the roadside, this factor might be relevant to establishing one element of negligent infliction of emotional distress (i.e., that she had some "fear for her own safety"), but this would not affect the intentional or reckless infliction of emotional distress claim, which requires that the conduct actually be directed at that third person. If, however, the "directed at" element had been established, the *Restatement* then merely requires that the family member be "present at the time," which was certainly met in this case, whether or not Mrs. Dornfeld actually "observed" the fatal accident.

**6.** While respondent's claim in this case fails because no conduct was "directed at" her husband, we decline to reach the issue of whether this court would adopt section 46(2) of the *Restatement (Second) of Torts* under a different set of facts.