GERMAN MUTUAL INSURANCE
COMPANY, Appellant,

v.

Douglas YEAGER, et al., Joshua
Jordan, et al., Respondents,

Mark Eckelman, d/b/a Eckelman
Gunsmithing, Defendant.

No. C5–96–946.

Court of Appeals of Minnesota.

Oct. 8, 1996.

Review Denied Dec. 23, 1996.

Macronald R. Willemssen, Melchert, Hubert, Sjodin & Willemssen, Chaska, for appellant.

Erick J. Askegaard, Askegaard & Robinson, P.A., Brainerd, for respondents Douglas Yeager, et al.

Steven D. Lastovich, Steven D. Lastovich, Ltd., Baxter, for respondents Joshua Jordan, et al.

Michael W. Haag, Duluth, for defendant Mark Eckelman, d/b/a Eckelman Gunsmithing.

Considered and decided by SHORT, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SHORT, Judge.

When sixteen-year-old William Yeager lit the fuse on a homemade explosive device, a flying plastic fragment caused traumatic brain injury to his sixteen-year-old friend. In this declaratory judgment action involving insurance coverage, German Mutual Insurance Company (insurer) moved for summary judgment on the basis of the intentional act exclusion in its homeowner's insurance policy. Yeager and the injured boy's family brought cross-motions for summary judgment, alleging the injuries were accidental rather than intentional. In granting judgment against the insurer, the trial court ruled the intentional act exclusion was inapplicable. On appeal, the insurer argues the trial court erred as a matter of law.

## FACTS

On September 18, 1994, Yeager went hunting with three other juveniles. He brought along several three- to four-inch pieces of half-inch polyvinylchloride pipe filled with black powder. As the boys hunted, Yeager lit and threw one of his homemade devices, which exploded in the air without incident. Later, as the boys sat in a circle in the woods during a break from hunting, Yeager lit another fuse and threw the device over his shoulder in the opposite direction from the boys, towards a sloping drop-off into water. As Yeager threw his device into the air, he said, "See you, guys." The lit explosive travelled only five to nine feet and exploded. Although Yeager was standing closest to the explosion, another boy, situated twenty feet from the location of the explosive, was seriously injured when a fragment struck him in the head.

Yeager was devastated by his friend's injury. He stayed with his injured friend while the other boys ran for help. Yeager hid his gun and the remaining explosives and concocted a story about his friend being hit by a stray bullet. Later, that "tale" unraveled. The police officers who investigated the incident testified in depositions that they had no reason to believe Yeager intended to harm anyone. All four boys testified Yeager exploded the device as a "prank." Yeager was adjudicated delinquent for negligent discharge of an explosive device in violation of Minn.Stat. § 299F.83 (1994).

## ISSUE

Does the intentional act exclusion in the homeowner's insurance policy preclude coverage for Yeager's act?

## ANALYSIS

Summary judgment is appropriate if there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal from a grant of summary judgment, this court must determine whether there are genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The construc-

tion of an insurance policy is a question of law, subject to de novo review. *Meister v. Western Nat'l Mut. Ins.*, 479 N.W.2d 372, 376 (Minn.1992).

The policy at issue contains an unambiguous intentional act exclusion:

> This policy does not apply to liability which results directly or indirectly from

> \*  \*  \*  \*  \*  \*

> 8. an intentional act of an insured or an act done at the direction of an insured.

*See* W.E. Merritt III, Annotation, *Liability Insurance: Specific Exclusion of Liability for Injury Intentionally Caused by Insured*, 2 A.L.R.3d 1238, 1239 (1965) (noting the existence of insurance policy clauses specifically excluding coverage for personal injury or property damage intentionally caused by or at direction of insured). The insurer did not include a criminal act exclusion in the homeowner's policy. *See* K.A. Drechsler, Annotation, *"Violation of Law" Clause in Life or Accident Policy as Requiring Causative Connection Between Violation of Law by Insured and His Death or Injury*, 166 A.L.R. 1118, 1119 (1947) (recognizing some accident insurance policies contain exception for injuries caused by, while, or in consequence of, insured's violation of a law); *see, e.g., Liebenstein v. Allstate Ins.*, 517 N.W.2d 73, 75 (Minn.App.1994) (upholding exclusion that precluded coverage for injuries resulting from criminal act regardless of intent).

An intentional act exclusion applies only where the insured acts with the specific intent to cause bodily harm. *State Farm Fire & Cas. v. Wicka*, 474 N.W.2d 324, 329 (Minn.1991); *Woida v. North Star Mut. Ins.*, 306 N.W.2d 570, 573 (Minn.1981). Coverage is precluded by such an exclusion only where the insured intends to cause harm, not merely where the insured generally intends the act. *Id.* When the nature and circumstances of the insured's act are such that harm is substantially certain to result, intent to harm is inferred as a matter of law. *R.W. v. T.F.*, 528 N.W.2d 869, 873 (Minn.1995) (inferring as matter of law intention to transmit disease due to insured's knowing failure to disclose he had genital herpes); *Allstate*

*Ins. v. S.F.*, 518 N.W.2d 37, 40 (Minn.1994) (invoking intentional injury exclusion as matter of law with respect to claims of nonconsensual sexual assault and battery); *Fireman's Fund Ins. v. Hill*, 314 N.W.2d 834, 835 (Minn.1982) (inferring intent as matter of law where insured, a foster parent, sexually abused minor foster child and claimed he did not intend actual harm to result); *Woida*, 306 N.W.2d at 573 (presuming intent where insured shot armor-piercing rifle bullets at truck he knew to be occupied by guards).

The insurer concedes Yeager did not subjectively intend to hurt his friend. The insurer argues we should infer the requisite intent because Yeager knew the damage that "could occur," he knew what a pipe bomb "could accomplish," he engaged in a voluntary act that caused "foreseeable harm," he was "fully aware of all the dangers involved," and the injury was a "natural and probable consequence of the illegal and wrongful pipe bomb construction and explosion." We are asked to determine whether intent should be inferred as a matter of law because Yeager exploded an illegal pipe bomb.

We do not sanction the use of inherently dangerous and illegal homemade explosive devices by anyone. However, there is no criminal act exclusion in this policy. The insurer could have made injuries arising from illegal acts per se excluded, regardless of the insured's state of mind, but failed to do so. Given the explicit terms of the policy, our inquiry is whether the harm was substantially certain to result from Yeager's conduct. The record reveals: (1) earlier, Yeager lit at least two fuses and exploded homemade devices in front of his friends without incident; (2) although Yeager was closest to the explosion, he was not injured in the incident; (3) the injured boy was twenty feet from the location of the explosion; and (4) Yeager intentionally threw the device away from himself and his friends. These undisputed facts demonstrate that harm was not substantially certain to result from Yeager's conduct. Under these circumstances, we cannot infer intent as a matter of law. We conclude the intentional act exclusion does not apply, and the trial court properly granted summary judgment to Yeager and his injured friend's family.

## DECISION

The intentional act exclusion of this homeowner's insurance policy would apply only if Yeager subjectively intended the harm or if the harm was substantially certain to result. The trial court properly granted summary judgment against the insurer.

**Affirmed.**