Eileen **NYGAARD**, as personal representative of the Estate of Donna Link, deceased, Appellant,

v.

**STATE FARM INSURANCE COMPANY,** Respondent,

Lonnie Odegard, Respondent.

No. C8–98–1772.

Court of Appeals of Minnesota.

April 20, 1999.

Kenneth B. Huber, John G. Ness & Associates, Minneapolis, MN (for appellant)

Suzanne Wolbeck Kvas, Stringer & Rohleder, Ltd., St. Paul, MN (for respondent State Farm Insurance Company)

Steven J. Muth, Metcalf, Larson & Muth, P.A., Monticello, MN (for respondent Lonnie Odegard)

Considered and decided by CRIPPEN, Presiding Judge, AMUNDSON, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant challenges the district court's grant of summary judgment in favor of respondents. We hold that respondent-insurer's insurance policy excludes third-party coverage for an intentional collision and we affirm.

## FACTS

On the afternoon of February 27, 1995, appellant's daughter committed suicide by driving her automobile into an 18–wheel tractor-trailer driven by respondent-driver, Lonnie Odegard. Prior to the collision, the decedent had left behind suicide notes addressed to her parents and best friend. As a result of the collision, Odegard was pushed into a ditch. Soon after, Odegard developed shoul-

der problems, which required surgery and caused him to lose time at work. At the time of the filing of this action, Odegard had received approximately $28,000 in workers' compensation benefits.

The original plaintiff in this case, the workers' compensation insurer providing Odegard's benefits, commenced an action against decedent's insurer, respondent State Farm Insurance Company. Plaintiff-insurer sought declaratory relief, asking the district court to compel State Farm to provide coverage to the decedent's estate. The current appellant, Eileen Nygaard, mother and personal representative of the decedent, later joined the suit to compel State Farm to provide insurance coverage for the collision.

On summary judgment, State Farm opposed appellant's motion for declaratory relief because of an "accident" provision in decedent's State Farm policy. In the amended complaint and brief to this court, appellant conceded the deceased's suicidal intent, explaining that the deceased "picked [Odegard's] truck to drive into, in order to commit suicide. She achieved her objective, and was killed by the collision." The "Liability" section of the policy provided that:

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

a. *bodily injury* to others, and

b. damage to or destruction of property including loss of its use,

caused by accident resulting from the ownership, maintenance or use of *your car*;

\* \* \* \*

State Farm maintained that appellant should be denied coverage because the decedent's act of suicide was not an accident. The district court granted State Farm's motion for summary judgment without a memo or explanation.

Appellant challenges the district court's order and judgment, contending that State Farm must provide coverage to decedent's estate, which would allow the workers' compensation insurer to pursue liability indemnification from respondent-insurer.

## ISSUE

Does the deceased's suicide qualify as an "accident" for the purpose of motor-vehicle third-party liability coverage?

## ANALYSIS

■ On appeal from summary judgment, a reviewing court must determine whether the district court erred in its application of the law and whether there are any genuine issues of material fact. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). On established facts, "[i]nsurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992) (citation omitted). Yet, a reviewing court views "the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

The current issue presents a case of first impression for this court. The supreme court has explained that issues of insurance coverage and exclusions are fact and situation dependent. *See, e.g., Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921, 923 (Minn.1985). While this case features unique facts, Minnesota appellate courts have ruled on comparable questions, and, as a result, this court is not without precedent.

■ The result here rests on the interpretation and application of respondent's insurance policy issued to the decedent. "An insurance policy provision is to be interpreted according to both its plain, ordinary meaning and what a reasonable person in the position of the insured would have understood it to mean." *Retail Systems, Inc. v. CNA Ins. Cos.*, 469 N.W.2d 735, 737 (Minn. App.1991) (citing *Farmers Home Mut. Ins. Co. v. Lill*, 332 N.W.2d 635, 637 (Minn.1983)), *review denied* (Minn. Aug. 2, 1991). Unambiguous language in an insurance policy must be accorded its plain and ordinary meaning. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 311 (Minn.1995). Finally, a court "must not create an ambiguity where none exists in order to afford coverage to the insured." *Progressive Cas. Ins. Co. v. Metcalf*, 501 N.W.2d 690, 692 (Minn.App.1993) (citation omitted).

■ The decedent's policy is unambiguous. The policy provides coverage for an "accident." The supreme court has defined "accident" to have a generally understood meaning: "an accident is simply a happening that is unexpected and unintended." *McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 478 (Minn.1992) (citing *Weis v. State Farm Mut. Auto. Ins. Co.*, 242 Minn. 141, 144, 64 N.W.2d 366, 368 (1954) ("an unexpected happening without intention or design")). If the collision in this case were unexpected or unintended, then coverage exists, and if not, then coverage is barred. *See id.* (interpreting accident coverage to imply an "intentional act" exclusion).

■ Appellant argues that Odegard's perspective is controlling, and, because the collision was "unexpected" from that perspective, coverage should exist. But such a conclusion overlooks the rulings of the supreme court in *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246 (Minn.1998), and *McIntosh.*

*Lobeck* discussed an exclusion's validity, distinguishing between first- and third-party benefits in light of the Minnesota No–Fault Act. The *Lobeck* court explained that the no-fault act " 'leaves unaltered the basic framework of the law of [third-party] liability insurance' " despite its requirement of first-party benefits. *Id.* at 250 (quoting *Hilden v. Iowa Nat. Mut. Ins. Co.*, 365 N.W.2d 765, 769 (Minn.1985). "As such, while we have often invalidated exclusions to first-party coverage under the No–Fault Act, we have upheld exclusions to third-party liability coverage." *Id.*

The *McIntosh* court confronted a policy similar to our present case which also provided coverage only for an "accident." In addition, the policy question in *McIntosh* featured an intentional act that caused injury. The insured was injured by a disgruntled former boyfriend who shot her in the head during a car chase. The insured claimed both first-party no-fault coverage and uninsured motorist benefits because the boyfriend lacked automobile insurance. 488 N.W.2d at 477.

The court explained that the case rested on whose perspective defines "accident." *Id.* at 478. The court noted that the "term 'accident' takes its meaning from the context in which it is used." *Id.* at 479. In the first-party no-fault context, the term "accident" is considered from the point of view of the victim. *Id.* at 480. The court reached this result because no-fault benefit eligibility depends "exclusively on the injured victim and whether she has been hurt under circumstances arising from the use of a motor vehicle." *Id.*

The court ruled an "accident" is viewed from the perspective of the tortfeasor in the context of uninsured-underinsured coverage. *Id.* at 479. The court so concluded by first noting that liability focuses on the conduct of the uninsured motorist because compensation under an insured's policy rests on proving that the uninsured is liable. *Id.* Ruling that uninsured motorist coverage is not first-party in nature, the court explained that "[u]ninsured motorist coverage is not no-fault coverage; fault on the part of the uninsured motorist must be proven under tort law." *Id.*

■ The court's uninsured/underinsured analysis is persuasive in the present case, because the third-party liability benefits that appellant claims must also be proven under tort law. Appellant pursues indemnity for the decedent's act. Such indemnity rests on the decedent's tort liability for Odegard's injuries.

Moreover, as cited by the *McIntosh* court, the committee comment to section 2 of the Uniform Motor Vehicle Accident Reparations Act (UMVARA) notes that

the term "accident" as applied to the obligation to maintain security for tort liability, refers to events which are "accidents" from the point of view of the person causing harm.

14 U.L.A. 41, 53 (1990); *see McIntosh*, 488 N.W.2d at 479. Thus, liability to a third party for the first party's acts naturally focuses on the actions of the tortfeasor, which in this case is the decedent.

■ Next, we move to decide whether coverage exists under the decedent's policy. Appellant concedes that the decedent intentionally collided with Odegard to commit sui-

cide. Because the collision was neither unexpected nor unintended from the decedent's perspective, it was not an accident. *See McIntosh*, 488 N.W.2d at 478. As a result, coverage is not afforded by this court under State Farm's policy.

Yet, appellant argues that because the decedent did not intend to injure Odegard, the intentional act exclusion is not applicable. *See German Mut. Ins. Co. v. Yeager*, 554 N.W.2d 116, 117 (Minn.App.1996), *review denied* (Minn. Dec. 23, 1996) (ruling that an intentional act exclusion to insurance coverage applies only when insured intends to cause harm, not when insured merely intends the act); *see also Continental W. Ins. Co. v. Toal*, 309 Minn. 169, 177–78, 244 N.W.2d 121, 126 (1976) (inferring intent to injure when the acts were calculated and remorseless, such as intentional preparation to inflict serious injury by carrying loaded guns). But our case is distinguishable from such cases because the decedent's subjective intent is irrelevant. This case does not depend on an intent to injure, but instead focuses on whether the collision qualifies as an "accident" under the policy.

## DECISION

The district court did not err in denying coverage. The decedent's intentional act of suicide does not constitute an "accident" for purposes of third-party liability insurance coverage.

**Affirmed.**

AMUNDSON, Judge (dissenting).

The majority is correct: Under the decedent's automobile liability policy, coverage does not exist for an "intentional act." I do not agree, however, that the act involved in this matter was "intentional," even when viewed from the perspective of the tortfeasor, and I respectfully dissent.

The tragically unfortunate decedent intended to take her own life. To that end, she selected an automobile collision to perfect her plan. Completely at random, she ran her vehicle into an oncoming truck and severely injured its innocent driver. Can it be said that she intended the consequences this act had on the driver of the truck? That she "expected or intended" Odegard's injury, a man whose existence was completely unknown to her and by mere serendipity, found himself colliding with her? I think not. Had she elected to merely propel her car off the road and then fell over a cliff and upon this truck, would we be asking this question? Of course not. But where is the difference?

The Minnesota Supreme Court has long recognized "the distinction between intentional acts and unintended injuries" for purposes of an "intentional act" exclusion in a liability policy. *Continental W. Ins. Co. v. Toal*, 309 Minn. 169, 175, 244 N.W.2d 121, 124 (1976). The *Toal* court noted that although tort and criminal law presume that the person intends the natural and probable consequences of his intentional acts, this presumption "has no application to the interpretation of terms used in insurance contracts." *Id.* at 175, 244 N.W.2d at 125. The supreme court more recently noted:

The law in Minnesota is well-settled that an intentional act exclusion applies only where the insured acts with the specific intent to cause bodily harm. Specifically, the requisite intent demands that the insured intended the harm itself, not merely that the insured generally intended to act.

*R.W. v. T.F.*, 528 N.W.2d 869, 872 (Minn. 1995) (citations omitted).

These principles were applied in a case preceding *Toal*, *Caspersen v. Webber*, 298 Minn. 93, 213 N.W.2d 327 (1973). In *Caspersen*, the insured pushed aside a hatcheck employee at the restaurant where he was eating. *Id.* at 96, 213 N.W.2d at 328. The employee was injured as a result of the push. *Id.* While the insured intended to push the employee aside so that he could be free to find his coat, he testified that he did not intend her resulting injury. *Id.* In finding coverage under the insured's policy, which specifically excluded coverage for intentional bodily injuries caused by the insured, the supreme court held that "where no bodily injury is intended, an [act] does not come within the exclusionary clause." *Id.* at 97–98, 213 N.W.2d at 330. Thus, when the act itself is intended, but the resulting injury is

not, the intentional act exclusion has no application. *Id.* at 98, 213 N.W.2d at 330.

Here, we are not even dealing with a specific "intentional act" exclusion, but a liability policy that proposes coverage for injuries "caused by accident." The majority, however, implies that "accident" coverage be interpreted as the functional equivalent of an "intentional act" exclusion.

In this case the tortfeasor is unable to testify with respect to her intent. Can it be assumed that the decedent intended Odegard's injuries? To the contrary, how can you intend to injure someone you do not know exists? It is undisputed that Odegard was totally unknown to the decedent. The decedent, depressed and driven to the last full measure of despair, cannot be said to have intended anything else except to end her life. We certainly cannot infer that she intended Odegard be injured.

It is true that the supreme court held that in some instances, the necessary intent may be inferred as a matter of law. *R.W.*, 528 N.W.2d at 872. "The determination to infer intent as a matter of law results from a case by case factual inquiry, not a bright line rule of law." *Id.* at 873. In making this determination, we are to look at the "calculated nature" of the intent and the likelihood of harm; the greater the likelihood of harm, the more reason there is to infer intent. *Id.* In *Toal*, the supreme court inferred intent where the insured followed through with an armed robbery with the knowledge that someone might be injured or killed in the process. 309 Minn. at 177, 244 N.W.2d at 126.

It may be said that the decedent may have contemplated that someone could be injured in her suicide attempt. It must also be said that the decedent acted negligently or even recklessly. None of these states of mind bring this scenario within an intentional act exclusion and certainly does not preclude coverage for an "accident." *See Dornfeld v. Oberg*, 491 N.W.2d 297, 301 (Minn.App.1992) (stating that an act that is reckless, but not intentional, will not come with an intentional act exclusion) *rev'd in part on other grounds*, 503 N.W.2d 115 (Minn.1993); *Milbank Ins. Co. v. B.L.G.*, 484 N.W.2d 52, 58 (Minn.App.

1992) (adopting the view that the term "accident" includes all negligently caused injury).

The evidence supports only that the decedent intended the act of driving into Odegard's truck, fatally injuring herself. There is no evidence she intended the injury to Odegard. I respectfully dissent and would allow Odegard to recover under decedent's automobile liability coverage.