Joshua Richard LOBECK, Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Respondent,

West Bend Mutual Automobile Insurance Co., petitioner, Appellant.

No. CX–97–421.

Supreme Court of Minnesota.

July 30, 1998.

Ronald L. Snelling, Snelling, Christensen & Laue, P.A., Minneapolis, for appellant.

Roderick D. Blanchard, William M. Hart, Katherine A. McBride, Meagher & Geer, P.L.L.P., Minneapolis, for State Farm.

Dale M. Wagner, Christopher R. Morris, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for West Bend.

## OPINION

PAUL H. ANDERSON, Justice.

The question we must answer in this case is straightforward: is a provision in an automobile insurance policy valid and enforceable when it excludes coverage for an insured if the insured's liability to a third party arises while the insured was driving a vehicle without permission? The Hennepin County District Court concluded that such an exclusion was valid and enforceable and granted summary judgment for the insurance company that denied coverage. The Minnesota Court of Appeals reversed, concluding that such an exclusion violates the Minnesota No–Fault Act, Minn.Stat. §§ 65B.41–.71 (1996). We hold that such an exclusion is valid and enforceable and reinstate summary judgment for the insurance company.

The summer of 1994 was nearing its end when 18–year–old Christopher Reid decided to celebrate by having a few friends over to his house before they all left for college. Christopher's parents and younger sister were out of town, so he had the house to himself. He and his friends spent the night

playing ping-pong, listening to music, and drinking beer and Jack Daniels.

Around 2:00 a.m., respondent Joshua Lobeck and his friend Michael Aeshliman went out to the garage to have a cigarette. Parked inside the garage was a Mazda 929, which belonged to Steven Reid, Christopher's father. The idea came up to take the Mazda for a drive, and according to Lobeck, Aeshliman went inside the house to get the keys. Aeshliman, however, recounts the evening somewhat differently. According to Aeshliman, at around 2:15 a.m., Lobeck approached him with the keys to the Mazda. Aeshliman asserts that he told Lobeck that they should ask Christopher for permission before they took the Mazda. Both Lobeck and Aeshliman admit, however, that neither one of them asked Christopher for permission to drive the Mazda. It is also undisputed that because Steven Reid was out of town, no one asked Steven Reid's permission to use the Mazda.

Nevertheless, Lobeck and Aeshliman took the Mazda. Lobeck drove because he was the one with a driver's license. Within two miles of the Reid home, Lobeck approached a curve and lost control of the Mazda. Two wheels went off the road and onto the gravel, causing the car to skid. Lobeck over-corrected, struck a power pole, and the Mazda went airborne, rolled over several times, and landed in the ditch. Lobeck was thrown from the Mazda, but Aeshliman remained inside where Lobeck could hear him screaming that he could not feel his legs.

When the police arrived, they found Lobeck, who smelled of alcohol, outside the Mazda and Aeshliman still in the front passenger seat. Aeshliman was rushed to the hospital where the doctors discovered that he had a severed spine and was paralyzed from the waist down. Police took Lobeck to the hospital for a blood sample, and at 4:27 a.m. his blood alcohol content was .15. A police department accident reconstructionist estimated that Lobeck was driving between 65 and 79 mph at the time of the accident. Later that day, Steven Reid was notified that his Mazda had been damaged in an accident. Reid subsequently reported the automobile stolen and made a criminal complaint against Lobeck.

Aeshliman had insurance coverage that paid for a portion of his medical expenses. In addition, he commenced an action against Steven Reid and Lobeck for the remainder of his expenses. Reid had insurance coverage through respondent State Farm Mutual Insurance Company, with automobile liability and umbrella liability coverage limits up to $1,000,000. Lobeck was covered up to $300,000 by his parents' automobile liability policy with appellant West Bend Mutual Insurance Company. Initially, both State Farm and West Bend tendered a defense for Lobeck. But after discovery revealed that Lobeck did not have permission to drive Reid's Mazda, both insurance companies withdrew their defense based on exclusions in their policies. Reid's State Farm policy covered use by "any other person while using such a car if its use is with the consent of you or your spouse." Lobeck's West Bend policy provided that it did "not cover liability arising out of the use of any vehicle by you or your family if that use is without permission."

Lobeck commenced an action against both insurance companies, arguing first that he was a permissive driver and second that, even if he did not have permission, he was nonetheless legally entitled to coverage. Both insurance companies moved for summary judgment, contending that they were not required to defend Lobeck or to provide coverage because Lobeck did not have permission to drive Reid's Mazda. The district court agreed with the insurance companies and granted summary judgment in their favor. The court ruled that under Reid's State Farm policy, there was no coverage for a nonpermissive driver. As to Lobeck's West Bend policy, the court concluded that the law did not require the court to disregard the exclusion for nonpermissive drivers because Lobeck did not have a good faith belief that he had permission to drive the Mazda. After this ruling, Lobeck and Aeshliman signed an agreement stipulating that Lobeck was liable for Aeshliman's injuries. Lobeck consented to have a judgment of $1,500,000 entered in favor of Aeshliman, provided that Aeshliman would satisfy this judgment only from the

State Farm and West Bend liability insurance policies.

Thereafter, Aeshliman effectively took over the pending litigation and appealed the district court's grant of summary judgment for the two insurance companies. The court of appeals affirmed the grant of summary judgment for State Farm, but reversed the grant of summary judgment for West Bend. The court concluded that because Lobeck did not have permission to drive Reid's Mazda, there was no coverage under Reid's State Farm policy, and thus affirmed the district court in that respect. Aeshliman has not appealed the conclusion that Lobeck was driving without permission or the affirmance of summary judgment for State Farm, and therefore this part of the lower court's decision is now the law of the case.

The court of appeals reached a different conclusion regarding Lobeck's West Bend policy, relying on one of its earlier opinions dealing with exclusions from insurance coverage. *See Safeco Ins. Cos. v. Diaz,* 385 N.W.2d 845 (Minn.App.1986), *pet. for rev. denied* (Minn., June 30, 1986). The court stated that if it applied West Bend's exclusion, the injured party—Aeshliman—would be unable to recover for injuries caused by the accident. Further, the court reasoned that Lobeck was entitled to the protection for which his parents paid. Thus, the court of appeals concluded that West Bend's exclusion was void under the No–Fault Act and reversed the district court's grant of summary judgment for West Bend. West Bend appealed to this court, arguing that its exclusion is valid and enforceable.

■ On an appeal from summary judgment, we examine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). It is undisputed that Lobeck did not have permission to take the Mazda and that he did not have a reasonable belief that he had permission.[1]

Therefore, the only issue on appeal is whether the exclusion is valid and enforceable. This is a question of law that we review de novo. *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992).

■ General principles of contract interpretation apply to insurance policies. *St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.,* 321 N.W.2d 41, 45 (Minn.1982). When insurance policy language is clear and unambiguous, "the language used must be given its usual and accepted meaning." *Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Moreover, "[e]xclusions in a policy * * * are as much a part of the contract as other parts thereof and must be given the same consideration in determining what is the coverage." *Id.* at 295, 104 N.W.2d at 24–25. Here, West Bend's policy exclusion is clear, providing that it does "not cover liability arising out of the use of any vehicle * * * if that use is without permission." As long as an insurance policy does not omit coverage that is required by law and the policy does not violate applicable statutes, "the extent of the insurer's liability is governed by the contract entered into." *Reinsurance Ass'n of Minnesota v. Hanks,* 539 N.W.2d 793, 797 (Minn.1995) (quoting *American Family Mut. Ins. Co. v. Ryan,* 330 N.W.2d 113, 115 (Minn. 1983)). Therefore, we will enforce West Bend's unambiguous policy exclusion unless we determine that it omits coverage required by law or violates an applicable statute.

■ To make this determination, we must look to the Minnesota No–Fault Act, which prescribes the necessary insurance coverage that each vehicle owner must obtain. The No–Fault Act was adopted to relieve the severe economic distress of uncompensated automobile accident victims. Minn.Stat. § 65B.42(1). The No–Fault Act is primarily aimed at providing first-party benefits to the insured, thereby eliminating the need to prove liability before an injured party can recover medical or other expenses. The Act requires that every insurance policy contain

1.  A genuine issue remains as to whether Aeshliman believed that he and Lobeck were taking the Mazda without permission, but Aeshliman's belief regarding permission is not a material fact. The West Bend exclusionary clause refers only to

the driver's—Lobeck's—permission. Moreover, as stated earlier, it is already the law of the case that Lobeck did not have permission to take the Mazda.

certain first-party benefits, such as basic economic loss benefits and uninsured and underinsured motorist coverage. Minn.Stat. § 65B.49, subds. 2, 3a. These types of coverage are first-party benefits because they pay for the insured's own losses in the event of an accident. These benefits protect persons, not vehicles, and therefore the benefits of first-party coverage follow the insured person. *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d 913, 918 (Minn.1978). At oral argument, Aeshliman's attorney admitted that Aeshliman did have insurance coverage that paid for a portion of his expenses. To the extent that Aeshliman received his first-party benefits, the primary purpose of the No-Fault Act has been met.

■ The No-Fault Act also addresses third-party benefits. It requires that each insurance policy contain liability coverage which compensates a third party who is injured in an automobile accident for which the insured is liable. Minn.Stat. § 65B.49, subd. 3. Benefits received as part of liability coverage are known as third-party benefits because the benefits accrue to someone other than the insured—a third party. These benefits are granted "with respect to each vehicle for which coverage is thereby granted." Id. at subd. 3(1). As such, liability coverage follows the vehicle and not the person. *Hilden v. Iowa Nat. Mut. Ins. Co.*, 365 N.W.2d 765, 769 (Minn.1985). The distinction between third-party and first-party benefits is crucial when determining the validity of a policy exclusion. We reiterated this distinction in our recent opinion, *Hertz Corp. v. State Farm Mutual Insurance Co.*, where we stated that the No-Fault Act mandates that "all automobile *owners* carry liability insurance." 573 N.W.2d 686, 689 (Minn.1998) (emphasis added). The No-Fault Act requires only that an automobile owner's policy include third-party liability coverage.

We have repeatedly stated that even though the No-Fault Act requires liability coverage, the "Minnesota No-Fault Act leaves unaltered the basic framework of the law of liability insurance." *Hilden*, 365 N.W.2d at 769; *Toomey v. Krone*, 306 N.W.2d 549, 550 (Minn.1981). In other words, because the No-Fault Act's primary purpose is to ensure the availability of first-party benefits, the law of liability insurance that addresses third-party benefits is virtually unaffected by the No-Fault Act. As such, while we have often invalidated exclusions to first-party coverage under the No-Fault Act, we have upheld exclusions to third-party liability coverage. *Compare Iverson*, 295 N.W.2d at 575 (invalidating policy exclusion to first-party coverage), *with Toomey*, 306 N.W.2d at 550 (upholding similar policy exclusion to third-party liability coverage). In fact, we explicitly made this distinction in *Toomey*.

In *Toomey*, we reviewed a policy provision that excluded liability coverage to an insured's relatives if those relatives owned their own automobiles. *Id.* We held that this exclusion did not violate the No-Fault Act, although the exclusion applied even if the relatives did not insure their own automobiles, thus potentially leaving their injuries uncompensated by any insurance policy. *Id.* at 549–50. Although we had invalidated similar policy exclusions to first-party coverage, we applied a different rationale in *Toomey* because the "premise underlying no-fault and uninsured motorist coverage is first-party in nature, as opposed to the third-party coverage involved in the instant case." *Id.* at 550.

Likewise, in a later case, we reversed a court of appeals decision that invalidated a policy exclusion from third-party liability coverage. *Horace Mann Ins. Co. v. Westenfield*, No. C5–92–792, 1993 WL 3853 at *1 (Minn.App., Jan. 18, 1993), rev'd, 496 N.W.2d 410 (Minn.1993). In *Horace Mann Insurance Co. v. Westenfield*, the insured, who was a passenger in another's automobile, grabbed the steering wheel, causing the car to leave the road and injure the driver who owned the automobile. *Id.* The driver sued the insured, who had an automobile insurance policy that excluded liability coverage if a person was "[u]sing a vehicle without a reasonable belief that the person is entitled to do so." *Id.* The court of appeals invalidated the exclusion, concluding that it was contrary to the No-Fault Act. *Id.* at *2. We reversed, stating that the "court of appeals has confused and therefore misapplied principles of No-Fault first-party coverage to this question which

only involves third-party liability coverage." *Horace Mann Ins. Co. v. Westenfield,* 496 N.W.2d 410, 410–11 (Minn.1993).

In ruling on the exclusion in Lobeck's West Bend policy, we believe that the court of appeals has again confused and therefore misapplied principles of first-party coverage to a question that involves only third-party liability coverage. In its decision, the court of appeals relied on *Safeco Insurance Cos. v. Diaz,* 385 N.W.2d at 845. In *Safeco,* the court of appeals reviewed a liability coverage exclusion for any person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." *Id.* at 846. The court remanded the case, holding that there was a genuine issue of material fact as to whether the insured had implied permission to use the automobile. *Id.* at 848–49. Alternatively, the court stated that such an exclusion violated the purposes of the No–Fault Act. *Id.* at 849. In reaching this conclusion, the court of appeals erroneously relied on cases from our court addressing first-party coverage exclusions. *Id.* To the extent that its conclusion was anything more than dictum, we overrule the portion of *Safeco* stating that an exclusion in an automobile liability policy which denies third-party coverage to an insured who drives a vehicle without permission is invalid.

 The automobile policy exclusion at issue here involves only third-party benefits. While the No–Fault Act requires an automobile owner's policy to include third-party liability coverage, there is nothing in the No–Fault Act, either explicit or implicit, that prohibits insurance companies from including some restrictions on liability coverage in their contracts. Therefore, we conclude that West Bend's policy that excludes liability coverage for accidents "arising out of the use of any vehicle * * * if that use is without permission" does not omit coverage required by the No–Fault Act. Furthermore, West Bend's exclusion of third-party coverage for Lobeck does not violate the purpose of the No–Fault Act, which is primarily aimed at providing first-party benefits to the insured and leaves unaltered the basic framework of liability law. We are not suggesting that all exclusions to liability coverage are valid, or that all exclusions to first-party coverage are invalid. However, exclusions to liability coverage are less likely to be contrary to the No–Fault Act than are exclusions to first-party coverage.

Aeshliman also argues that the West Bend exclusion violates public policy and Lobeck's reasonable expectation of coverage. The legislature has set forth this state's policy regarding automobile insurance in the No–Fault Act, and West Bend's exclusion violates neither the letter nor the purpose of that Act. Thus, the exclusion does not violate public policy. Moreover, Aeshliman's argument that Lobeck had a reasonable expectation of coverage when he drove an automobile without permission is without merit.

We reverse the court of appeals and reinstate summary judgment for West Bend.

Reversed.