*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1685**

Samantha LeCuyer,
Appellant,

vs.

West Bend Mutual Insurance Company,
Respondent.

**Filed July 14, 2014
Affirmed
Ross, Judge**

Anoka County District Court
File No. 02-CV-12-7012

Gerald T. Laurie, Ian S. Laurie, Laurie & Laurie, P.A., St. Louis Park, Minnesota (for appellant)

Michael R. Quinlivan, Pearson Quinlivan, PLC, Maplewood, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Bjorkman, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

Samantha LeCuyer obtained a money judgment against her former employer for sexual-harassment retaliation but did not collect. She informed the employer's former insurer, West Bend Mutual Insurance Company, of the judgment nearly two years after

the employer's policy expired, and she sought a declaratory judgment that would require West Bend to pay her the judgment amount. The district court granted summary judgment in favor of West Bend. Because West Bend did not receive timely notice of LeCuyer's claim against her employer so as to trigger its obligation under the terms of the insurance contract, West Bend is not liable. We affirm.

## FACTS

Samantha LeCuyer worked as a security guard for Wolf Protective Services beginning in August 2008. LeCuyer felt that two of her coworkers sexually harassed her. She complained to supervisors in September and October, and the company terminated her employment in December. LeCuyer sent a letter to the company on January 13, 2009, outlining her claims. Wolf's counsel responded by letter stating that Wolf would review its insurance policies and consider whether to submit a claim to its insurer. Wolf never informed LeCuyer whether it had an insurance policy that covered sexual-harassment claims. LeCuyer sued in April, alleging the company violated the Minnesota Human Rights Act. Wolf retained new counsel but still never informed LeCuyer whether it had an insurance policy that covered sexual-harassment claims.

Wolf filed an answer to LeCuyer's suit. Wolf's new counsel withdrew soon afterward, and Wolf did not retain another attorney. The district court conducted a bench trial in 2010. Wolf did not appear. The district court entered a default judgment against Wolf for $520,693.

LeCuyer eventually discovered that an affiliate of West Bend Mutual Insurance had issued Wolf an insurance policy covering employment practices. The policy

2

commenced on July 25, 2008 and ended on July 25, 2009. She wrote to West Bend on June 2, 2011, informing it of the default judgment against Wolf and requesting a copy of the policy. West Bend responded that it had received no previous notice of the claim or the judgment and that it had cancelled Wolf's policy in October 2008 because Wolf had stopped paying premiums. It informed LeCuyer that Wolf's policy had been a claims-made policy, which covered only claims made during the coverage period.

LeCuyer attempts to recover from West Bend because her collection efforts against Wolf have been fruitless. She filed a declaratory judgment action seeking to hold West Bend liable for her judgment. LeCuyer moved for summary judgment, arguing that she had made her claim within the coverage period. She also argued that Minnesota Statutes section 60A.08, subdivision 6 (2012), compels West Bend to provide coverage. The district court held that West Bend is not liable because LeCuyer had failed to make a claim to West Bend.

LeCuyer appeals.

## D E C I S I O N

LeCuyer challenges the district court's summary judgment decision. Our review is therefore de novo. *See Kelly v. State Farm Mut. Auto. Ins. Co.*, 666 N.W.2d 328, 330 (Minn. 2003). We must decide whether any genuine issue of material fact exists and whether the district court correctly applied the law. *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011).

# I

LeCuyer argues that she satisfied the notice provision of the insurance policy, making insurance coverage available to pay the damages ascribed to Wolf, because she reported the claim of harassment to Wolf. The parties agree that Wolf's insurance policy with West Bend controls the primary question in this appeal. The policy disclaims any obligation to provide coverage beyond its specific terms. It promises to "pay on behalf of the insured for 'damages' . . . arising out of any 'employment practices' to which this insurance applies," but it states that West Bend will cover an employee's damages claim against Wolf "*only if* . . . [a] 'claim' is *both* . . . made against any insured, in accordance with paragraph 3 below, during the policy period . . . *and* [r]eported to us . . . during the policy period or within thirty . . . days thereafter." (Emphasis added). The policy explains that a claim is made "[w]hen notice of such 'claim' is received and recorded by [Wolf] or by [West Bend], whichever comes first." West Bend is therefore liable to pay the judgment against Wolf only if West Bend received notice of LeCuyer's claim according to the policy's preconditions.

LeCuyer must carry the burden here. We apply general principles of contract interpretation to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). We construe the policy as a whole and give effect to the plain and ordinary meaning of its terms. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). And the party asserting coverage must establish a prima facie case that the policy applies. *Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013). LeCuyer has not met this burden.

4

The policy was written to be effective for one year beginning July 25, 2008, but West Bend asserts that it cancelled Wolf's policy October 16, 2008, for nonpayment of premiums. LeCuyer argues that the policy remained effective because West Bend failed to conform to statutory cancellation requirements. The record does not establish LeCuyer's argument that West Bend's efforts to cancel the policy were flawed, but we need not decide the point. LeCuyer did not report her sexual harassment claim *to West Bend* until her June 2011 letter. The claim was therefore not "reported to" West Bend until almost two years after the policy ended on its own terms. Because the policy covers only claims made and reported to West Bend "during the policy period or within thirty . . . days thereafter," the June 2011 notice was too late to trigger coverage.

LeCuyer argues that the language describing how to make a claim is ambiguous. West Bend disagrees. We need not resolve the conflict. Even if the policy language determining when a claim is made is unclear, the language about when a claim is "[r]eported to" the insurer is not, and the policy requires both a claim and a report to the insurer before coverage. The policy clearly does not cover any claims not reported to West Bend within the policy period. Because neither Wolf nor LeCuyer reported the claim to West Bend within the period mandated under the policy, the policy unambiguously requires no coverage.

## II

LeCuyer contends that Minnesota Statutes section 72A.201, subdivision 8(4) (2012), which addresses unfair insurance settlement practices, bars West Bend from denying coverage. But she did not raise this argument in any of her submissions to the

district court, or at the summary judgment hearing. We generally do not consider issues not raised and argued before the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). LeCuyer's argument that she has preserved the issue uses duct tape: she maintains that although she never raised the issue in the district court and the district court never decided the issue, the district court's order nonetheless mentions the Eighth Circuit case of *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422 (8th Cir. 1989), and the *Esmailzadeh* case in turn does mention section 72A.201 in one of its footnotes. On these attenuated links, LeCuyer implies that we should treat her present argument as retroactively incorporated into the arguments she actually made to the district court. We decline.

### III

LeCuyer's final argument is that Minnesota law requires West Bend to cover the judgment against Wolf because Wolf is bankrupt, insolvent, or dissolved. She bases this argument solely on Minnesota Statutes section 60A.08, subdivision 6 (2012), which specifies that all Minnesota insurance policies:

> shall, notwithstanding anything in the policy to the contrary, be deemed to contain the following condition:
>
> The bankruptcy, insolvency, or dissolution of the insured shall not relieve the insurer of any of its obligations under this policy, and in case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this policy against the company to the same extent that the insured would have, had the insured paid the final judgment.

6

LeCuyer urges that this statute embodies a public policy of guaranteeing insurance coverage to individuals with claims against insolvent entities. West Bend's insurance contract contains a provision substantially similar to the statutory clause:

> Subject to the exclusion in Section I, item C.8., the bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

Wolf's insurance policy adheres to the law. But it does not require coverage. The statute and Wolf's insurance policy provide only that bankruptcy or insolvency will not relieve West Bend of its obligations "under this policy." It does not create any new obligations beyond those required under the policy. Even if LeCuyer had presented evidence that Wolf was bankrupt or insolvent when LeCuyer filed her lawsuit, the policy does not impose coverage simply if Wolf is bankrupt or insolvent

**Affirmed.**