*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0520**

Christina Marshall,
Appellant,

vs.

Owen Hoglund,
Respondent,
Stephen Hoglund,
Respondent,
State Farm Mutual Automobile Insurance Co.,
Respondent,
Megan Heikes,
Respondent,
Integrity Insurance Co.,
Respondent,
Casey Pederson,
Respondent,
Warren Pederson, et al.,
Defendants.

**Filed December 14, 2015
Affirmed
Stauber, Judge**

Cook County District Court
File No. 16-CV-13-280

James W. Balmer, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, MN (for appellant)

Brian R. McCarthy, McCarthy & Barnes Law Firm, Duluth, Minnesota (for respondent Owen Hoglund)

Kyle H. Torvinen, Torvinen, Jones, Routh & Torvinen, S.C., Superior, Wisconsin (for respondents Stephen Hoglund and Integrity Insurance Company)

C. Todd Koebele, Brent D. Kettelkamp, HKM, P.A., St. Paul, Minnesota (for respondent State Farm Mutual Insurance Company)

Steven L. Viltoft, Hopkins, Minnesota (for respondent Megan Heikes)

Casey Pederson, Warren Pederson, Grand Marais, Minnesota (pro se defendants)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stauber, Judge.

## U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

In this appeal from summary-judgment dismissal of her declaratory-judgment action against respondent insurers following the death of her son in an automobile accident, appellant argues that the district court erred by determining that (1) no special circumstances exist that would trigger coverage and (2) the juvenile driver was not an additional insured under the terms of his father's policy. We affirm.

## FACTS

On June 13, 2013, respondent Owen Hoglund (Hoglund) was driving a car that crashed, resulting in the tragic death of passenger Dylan Marshall. At the time, Hoglund had alcohol, marijuana, and the drug Ecstasy in his system. The car belonged to respondent Casey Pederson, and Hoglund had taken the car without Pederson's express permission.

According to the undisputed facts, Hoglund, Marshall, Pederson, and other friends were at a bonfire on June 12, 2013. Many of the partygoers were drinking, but Pederson was not. About 2 a.m., the partygoers adjourned to Pederson's house. Pederson went to

2

bed, but his car was parked outside with the keys in the ignition. About 5 a.m., Hoglund, Dylan Marshall, and another boy decided to drive into Grand Marais to get breakfast. They did not awaken Pederson, but Hoglund took the car, assured by someone that Pederson would not mind. During the drive, the car rolled over and Dylan Marshall was killed.

Hoglund, a minor, lived with his mother, respondent Megan Heikes. Although Heikes and Hoglund's father, respondent Stephen Hoglund, shared legal custody of Hoglund, Heikes had full physical custody of Hoglund pursuant to a dissolution judgment and decree. Heikes had automobile insurance coverage through respondent State Farm Mutual Insurance Company. Stephen Hoglund had automobile insurance coverage through respondent Integrity Insurance Company. Heikes's State Farm policy excluded coverage for bodily injury that occurs when an insured is "operating a motor vehicle without a reasonable belief of the legal right to do so." Stephen Hoglund's Integrity policy provided liability coverage for "family member[s]," defined as "a person related to you by blood, marriage or adoption . . . whose principal residence [is the insured's]." The policy also stated: "If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child's principal residence." The Integrity policy also excluded liability coverage if a vehicle was used "without a reasonable belief that that person is entitled to do so."

Dylan Marshall's mother, appellant Christina Marshall (Marshall), sued Hoglund, Stephen Hoglund, Megan Heikes, Integrity, State Farm, Casey Pederson, and Warren Pederson. The district court granted summary judgment in favor of Stephen Hoglund,

3

Integrity, Heikes, and State Farm on August 25, 2014. An amended order from October 2, 2014, permitted immediate entry of judgment. This court dismissed Marshall's first appeal as premature because claims against Hoglund, Casey Pederson, and Warren Pederson were outstanding. The claims against everyone except the insurance companies were dismissed by agreement of the parties on January 29, 2015, with the district court order for judgment filed on February 3, 2015. Marshall filed a second notice of appeal in March 2015, contesting the summary judgment granted in favor of Integrity and State Farm.

## D E C I S I O N

Summary judgment must be granted if, based on all of the pleadings, discovery materials, and affidavits, there are no genuine issues as to material facts and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo to determine if there are any issues of material fact and whether the district court erred in applying the law. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). "The interpretation of an insurance policy and application of the policy to the facts of a case are questions of law [subject to] review de novo." *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 610 (Minn. 2012). "Insurance policies are contracts and, absent statutory provisions to the contrary, general principles of contract law apply." *Id.* at 611.

## I.

Marshall argues that Casey Pederson gave Hoglund implied permission to use his car and, therefore, Hoglund was driving the car with a reasonable belief that he had a

4

legal right to do so. Marshall asserts that special circumstances exist that create an inference of implied permission; these circumstances include the fact that Casey Pederson left his keys in the car and that he may have permitted friends to use the car on other occasions.

Marshall bases her argument on Minn. Stat. § 169.09, subd. 5a (2014), the so-called Minnesota Safety Responsibility Act. This section states that "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof." *Id.* "The burden of proving lack of [implied] consent is upon the named insured and requires a strong showing that the automobile was being used without the owner's knowledge and contrary to his explicit instructions." *Mut. Serv. Cas. Ins. Co. v. Lumbermens Mut. Cas. Co.*, 287 N.W.2d 385, 386 (Minn. 1979).

But this statute governs assignment of liability; it does not resolve questions of coverage under insurance contracts. Likewise, the cases Marshall relies upon, *Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630 (Minn. 1978) and *State Farm Mut. Ins. Co. v. Grain Belt Breweries, Inc.*, 309 Minn. 376, 245 N.W.2d 186 (1976), discuss whether an owner of a vehicle can be presumptively held negligent for the conduct of a driver using the vehicle without permission when there are special circumstances that make the risk of negligent conduct foreseeable. *Tapemark*, 273 N.W.2d at 636; *Grain Belt*, 309 Minn. at 381-82; 245 N.W.2d at 189-90. Here, the question is not whether the

5

owner of the motor vehicle, Casey Pederson, could have foreseen the risk; it is whether the two insurance policies exclude coverage.

The supreme court applied a coverage provision similar to that in the State Farm and Integrity policies to deny coverage under circumstances closely matching those in this case. *Lobeck v. State Farm Mut. Ins. Co.*, 582 N.W.2d 246, 251 (Minn. 1998). In that case, Joshua Lobeck was drinking at a friend's house; Lobeck and another teenager went to the garage and decided to take the homeowner's sports car for a drive. *Id.* at 247-48. Lobeck admitted that he did not ask and did not have permission to take the car, which he subsequently crashed, paralyzing the passenger. *Id.* at 248. The passenger sought coverage under Lobeck's parents' auto insurance policy, as well as the homeowner's auto insurance policy, both of which excluded coverage for non-owned vehicles used without the owner's permission. *Id.* The injured passenger argued that these exclusions defeat the purpose of the No-Fault Act, but the supreme court reasoned that although the act mandated first-party benefits to an insured, it did not change the law of third-party liability. *Id.* at 249-50. First-party benefits are intended for protection of the insured party; third-party liability benefits follow the vehicle rather than the person. *Id.* at 250. The supreme court concluded that the No-Fault Act requires insurers to provide certain unrestricted first-party benefits, but it does not prohibit an insurer from placing restrictions on third-party liability coverage. *Id.* at 251.

Likewise, the issue here is whether the two policies provide third-party liability coverage to Hoglund. The policies clearly exclude third-party liability coverage for damages incurred when a non-owned vehicle is driven by an insured without permission.

6

This is the same exclusion that the supreme court approved in *Lobeck*. *See Progressive Specialty Ins. Co. v. Widness*, 635 N.W.2d 516, 522 (Minn. 2001) (stating that "permissive drivers are covered under the insurance of the vehicle they are driving," but noting that a provision excluding "coverage for an insured when the insured's liability to a third party arises while the insured is driving a vehicle without permission" is valid).

The undisputed facts here provide a basis for excluding coverage under the provisions in both policies. Hoglund pleaded guilty to theft of a motor vehicle, admitting under oath that he did not have "permission or authority from the owner of the vehicle to drive." He agreed again to this statement in his deposition testimony. In his deposition, Casey Pederson stated that his car had been stolen and he had not given permission to anyone to drive it. He left the key in the ignition because he lives "in the middle of the woods and [didn't] believe that people would steal from me." On the day of the accident, Casey Pederson left the party at the bonfire before the others did, and thought that everyone was "going home with their sober driver," except for two friends who were staying overnight. Neither of the expected overnight guests were Hoglund. Casey Pederson was asleep when Hoglund took his car.

Marshall argues that Casey Pederson left his car in a place "where he knew young people, including . . . Hoglund, were present and illegally consuming alcohol" and that he left the car unlocked and keys in the ignition, knowing that the others wanted to drive into town in the morning. But this argument does not have a factual basis in the record. "[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not

7

sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

Based on the contract language of the two policies, which excludes coverage for non-permissive drivers, and the undisputed facts, the district court did not err in granting summary judgment to respondents.

## II.

The non-permissive-use exclusion provides a basis for summary judgment in favor of both respondents. But Marshall also challenges the district court's conclusion that Hoglund does not fall within the Integrity policy's definition of "family member."

The Integrity policy provides liability coverage for the insured, Stephen Hoglund, and "any family member." "Family member" is defined as "a person related to [the insured] by blood, marriage or adoption . . . whose principal residence is at the [insured's residence]. If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child's principal residence."

Hoglund was a minor at the time of the accident. Although Stephen Hoglund and Heikes shared joint legal custody of Hoglund, their dissolution judgment gave Heikes sole physical custody of Hoglund. Under the clear language of the policy, Hoglund's principal residence was with Heikes, his physical custodian; he was not a "family member" within the meaning of the policy definition, and, therefore, not an insured under Stephen Hoglund's Integrity policy.

An insurance policy is a contract.  *Remodeling Dimensions*, 819 N.W.2d at 611. "When the language of a contract is clear and unambiguous, [an appellate court] enforce[s] the agreement of the parties as expressed in the contract."  *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012).  If the Integrity policy had defined a family member by principal residence, there might be a question about how to define principal residence.  But the policy here includes a specific definition applicable to this situation: a minor child's principal residence is the residence of his custodial parent as adjudicated by a court.  Heikes was Hoglund's custodial parent under a dissolution judgment.

Marshall argues that Hoglund lived with both his parents from time to time.  But under the specific terms of the Integrity policy, the dissolution judgment is considered conclusive as to Hoglund's principal residence.  The district court did not err by granting summary judgment to Integrity based on this exclusion.

**Affirmed.**