c. with at least four wheels; and
d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
The Policy also contains the following exclusion:
EXCLUSIONS-READ THE FOLLOWING EXCLUSIONS CAREFULLY, IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.
Coverage under this Part I, including [Progressive's] duty to defend, will not apply to any insured person for:
....
10. bodily injury or property damage arising out of the ownership, maintenance, or use of any vehicle owned by [a named insured] or furnished or available for [a named insured's] regular use, other than a covered auto for which this coverage has been purchased. ...
A "covered auto" under the Policy is "any auto ... shown on the declarations page," any "additional auto," or any "replacement auto." An "additional auto" is one that a named insured becomes the owner of "during the policy period that does not permanently replace an auto shown on the declarations page" so long as the named insured notifies Progressive within 30 days of becoming the owner and pays any additional premium. A "replacement auto" is "an auto that permanently replaces an auto shown on the declarations page."
*1102 Graeser's golf cart is an E-Z-Go RXV Freedom model. The golf cart has no doors, is open on all sides, and is not equipped with a speedometer, seatbelts, or turn signals. The owner's guide of the E-Z-Go RXV Freedom model provides that "[t]hese vehicles are designed and manufactured for off-road use. They DO NOT meet the federal Motor Vehicle Safety Standards of the United States of America (USA) and are not equipped for operation on the public streets." The owner's guide expressly states that "E-Z-Go will NOT approve Distributor, Dealer or customer changes" to modify an E-Z-Go RXV Freedom model into a vehicle subject to federal Motor Vehicle Safety Standards. Graeser purchased the golf cart for his personal use several years prior to the July 9, 2013 accident and stored the golf cart in his garage. Graeser never registered the golf cart or obtained a permit from St. Francis to operate the golf cart on public roads.
Following the July 9, 2013 accident, Shawn Heath Wilson and Kelly Wilson (the Wilsons) filed a civil suit in Minnesota state court, alleging that Graeser operated the golf cart negligently at the time of the accident. Progressive subsequently filed this action for a declaratory judgment that Graeser's golf cart does not qualify for liability coverage under the Policy. The Wilsons filed a counterclaim for a declaration of coverage. Both Progressive and the Wilsons now move for summary judgment.
ANALYSIS
The Declaratory Judgment Act provides for a declaration of "the rights and other legal relations of any interested party ... whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Summary judgment is proper when the record establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, the Court considers the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Windstream Corp. v. Da Gragnano , 757 F.3d 798, 802-03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party must cite "particular parts of materials in the record" that support the assertion. Fed. R. Civ. P. 56(c)(1)(A) ; accord Krenik v. Cty. of Le Sueur , 47 F.3d 953, 957 (8th Cir. 1995).
I. Application of the Policy
Progressive argues that the Policy does not provide liability coverage for Shawn Heath Wilson's injuries because Graeser's golf cart is not an "auto" under the Policy. Even if it were, Progressive contends, an exclusion in the Policy applies to Graeser's use of the golf cart. The Wilsons counter that the Policy expressly provides liability coverage for the July 9, 2013 accident.[1]
"Interpretation of an insurance policy is a matter of state law." Progressive N. Ins. Co. v. McDonough , 608 F.3d 388, 390 (8th Cir. 2010) (internal quotation marks omitted). Because the Policy provides that it is governed by Minnesota law, interpretation of the Policy is subject to *1103 the general principle of contract interpretation that unambiguous language is given its usual and accepted meaning. Id. at 390-91 (citing Lobeck v. State Farm Mut. Auto. Ins. Co. , 582 N.W.2d 246, 249 (Minn. 1998) ). Whether insurance coverage applies also is a question of law. United Fin. Cas. Co. v. Nelson , 109 F.Supp.3d 1085, 1089 (D. Minn. 2015). The claimant bears the burden to "establish a prima facie case of coverage." Eng'g & Constr. Innovations, Inc. v. C.H. Bolduc Co. , 825 N.W.2d 695, 705 (Minn. 2013) (internal quotation marks omitted). If a claimant meets this burden, the burden shifts to the insurer to establish that an exclusion bars coverage. Hubred v. Control Data Corp. , 442 N.W.2d 308, 310 (Minn. 1989).
The Wilsons contend that the Policy's "LIABILITY TO OTHERS" provision is unambiguous and establishes a prima facie case of coverage. The "LIABILITY TO OTHERS" provision provides coverage when "an insured person becomes legally responsible because of an accident." According to the Wilsons, this provision is "not limited by what vehicle [the] insured person (Graeser) uses" and expressly covers any type of accident. But this argument ignores a salient portion of the provision. The "LIABILITY TO OTHERS" provision applies to circumstances in which "an insured person" is legally responsible for an accident. The Policy defines an "insured person" as a named insured who is involved in an accident "arising out of the ownership, maintenance, or use of an auto ." (Emphasis added.) Because Graeser was involved in an accident as the named insured, coverage depends on whether the July 9, 2013 accident arose out of Graeser's use of an "auto."
The Policy defines "auto" as a land motor vehicle "designed for operation principally upon public roads." The term "designed" means "to plan or produce with special intentional adaptation to a specific end." See Nelson , 109 F.Supp.3d at 1090 (quoting Stepec v. Farmers Ins. Co. , 301 Minn. 434, 222 N.W.2d 796, 798 (1974) ) (applying Minnesota law to determine that a snowmobile is not an "auto" under an insurance policy); accord Merriam-Webster's Collegiate Dictionary 338 (11th ed. 2007) (defining "design" as "deliberate purposive planning"). E-Z-Go, the manufacturer of Graeser's golf cart, expressly disclaims such a design intention in the owner's guide, which states that the golf cart is "designed and manufactured for off-road use" and is "not equipped for operation on the public streets." The owner's guide also advises that the golf cart would require significant modifications to comply with federal Motor Vehicle Safety Standards. The golf cart has no doors, speedometer, seatbelts, or turn signals for example. But the owner's guide provides that E-Z-Go will not approve any modifications in an effort to make the golf cart comply with federal Motor Vehicle Safety Standards. For these reasons, no genuine dispute of material fact exists as to whether the golf cart was designed for operation principally on public roads.
Accordingly, the Wilsons fail to establish a prima facie case for coverage under the Policy.[2]
II. Minnesota's No-Fault Automobile Insurance Act
The Wilsons argue, in the alternative, that certain provisions of the Policy violate the Minnesota No-Fault Automobile Insurance Act (No-Fault Act), Minn. Stat. §§ 65B.41 et seq. , and must be replaced. Once replaced, according to the *1104 Wilsons, the provisions of the Policy would cover the injuries Shawn Heath Wilson sustained arising from Graeser's operation of the golf cart. Progressive responds that the No-Fault Act does not apply to this litigation.
"The goal of statutory interpretation is to effectuate the intent of the Legislature." State Farm Mut. Auto Ins. Co. v. Lennartson , 872 N.W.2d 524, 529 (Minn. 2015). The plain meaning of a statute is controlling when "the Legislature's intent is clear from the [statute's] unambiguous language." Id. Statutory interpretation strives to give effect to all statutory provisions while avoiding absurd results and unjust consequences. Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277-78 (Minn. 2000). The No-Fault Act aims to "relieve the severe economic distress of uncompensated victims of automobile accidents" by requiring automobile insurers to offer, and automobile owners to maintain, automobile insurance policies with certain minimum protections. Minn. Stat. § 65B.42. A vehicle is not a "motor vehicle" under the No-Fault Act unless it "(a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property." Id. § 65B.43, subd. 2. A vehicle must satisfy both conditions to be a "motor vehicle" subject to the No-Fault Act. See State v. Nelson , 842 N.W.2d 433, 440 (Minn. 2014) (explaining that a statute's use of a conjunctive requires that all subparts be satisfied); Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11 , 662 N.W.2d 125, 131-32 (Minn. 2003) (same).
A "motor vehicle" under the No-Fault Act is a vehicle "designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets." Minn. Stat. § 65B.43, subd. 2. Because the word "designed" modifies only the phrase "self-propelled by an engine or motor," the Wilsons argue, a golf cart qualifies so long as it is used primarily upon public roads, highways or streets. This argument is unavailing. See, e.g. , Stepec , 222 N.W.2d at 798-99 (concluding the term "designed" in the No-Fault Act applies to and modifies the phrase "for use upon a highway"); Nelson , 109 F.Supp.3d at 1092 (same). The No-Fault Act's definition of "motor vehicle" therefore contains the same requirement as the Policy. To be a "motor vehicle," the golf cart would have to be designed primarily for use on public roads. Graeser's golf cart is not a "motor vehicle" under the No-Fault Act for the same reasons it is not an "auto" under the Policy. See Part I. Accordingly, the No-Fault Act is inapplicable to this dispute.
In light of the foregoing conclusion, any additional analysis of the No-Fault Act as applied to the Policy would be advisory. See Golden v. Zwickler , 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) ("The federal courts established pursuant to Article III of the Constitution do not render advisory opinions. ... [c]oncrete legal issues, presented in actual cases, not abstractions are requisite. This is as true of declaratory judgments as any other field." (internal quotation marks omitted)); accord Jasper v. Comm'r of Pub. Safety , 642 N.W.2d 435, 439 (Minn. 2002) ("We do not issue advisory opinions, nor do we decide cases merely to establish precedent.").
ORDER
Based on the foregoing analysis and all the files, records and proceedings herein, IT IS HEREBY ORDERED that:
1. Defendants Shawn Heath Wilson and Kelly Wilson's motion for summary judgment, (Dkt. 19), is DENIED .
*1105 2. Plaintiff Progressive Preferred Insurance Company's motion for summary judgment, (Dkt. 24), is GRANTED .
LET JUDGMENT BE ENTERED ACCORDINGLY.

The Wilsons's argument that certain terms of the Policy must be replaced with provisions of Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41 et seq. , is addressed in Part II.

Because the Wilsons fail to carry their initial burden, the Court need not address Progressive's alternative argument that an exclusion also bars coverage.